IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PATRICK CRAVEN, M.D., )
)
    Plaintiff, )
)
) No. _____
) **JURY DEMANDED**
v. )
)
STATE OF TENNESSEE; )
MARIE WILLIAMS, COMMISSIONER, )
TENNESSEE DEPARTMENT OF )
MENTAL HEALTH AND SUBSTANCE )
ABUSE; DR. TERRY HOLMES, )
MEDICAL DIRECTOR, TENNESSEE )
DEPARTMENT OF MENTAL HEALTH )
AND SUBSTANCE ABUSE; and )
DR. LYDIA HAREN, CLINICAL )
DIRECTOR, MOCCASIN BEND )
MENTAL HEALTH INSTITUTE, )
)
**Defendants.** )

## COMPLAINT

The plaintiff, Patrick Craven, M.D., hereby brings this suit against the defendants, and, for his cause of action, avers as follows:

1. The plaintiff is a citizen and resident of the State of Tennessee, residing in Hamilton County, Tennessee. Plaintiff is a physician licensed by the State of Tennessee and employed by the Tennessee Department of Mental Health and Substance Abuse. He has been so employed for approximately 31 years.

2. The defendant, the State of Tennessee, is a state of the United States of America, employs the plaintiff as set forth in paragraph 1, and owns and operates Moccasin Bend Mental

Health Institute in Hamilton County, Tennessee, where plaintiff has been employed for approximately 31 years.

3. The defendant, Marie Williams, is the Commissioner of the Tennessee Department of Mental Health and Substance Abuse.

4. The defendant, Dr. Terry Holmes, is the Chief Medical Officer of the Tennessee Department of Mental Health and Substance Abuse and the former Clinical Director of MBMHI.

5. The defendant, Dr. Lydia Haren, is the current Clinical Director of MBMHI.

6. This case is brought pursuant to the laws and/or Constitution of the United States, as set forth more fully below. Therefore, this Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. Section 1331.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. Section 1391. Among other things, a substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of Tennessee.

8. For approximately 31 years and continuing through the date of filing hereof, the plaintiff has been employed by the State of Tennessee as a licensed physician at MBMHI. The plaintiff, to the best of his knowledge, information, and belief, is still employed by the State of Tennessee. Plaintiff has not been discharged, nor has he received any official or unofficial notification that his employment has been terminated. Plaintiff, therefore, specifically reserves any and all rights that may not have accrued under federal or state law because he has not been terminated from his employment and, for the present, confines this Complaint to the failure or refusal to renew his staff and/or hospital privileges at MBMHI. Provided his privileges are restored or waived, then it is plaintiff's understanding that he may return to his employment at MBMHI.

2

Case 1:18-cv-00231-JRG-CHS   Document 1   Filed 09/27/18   Page 2 of 14   PageID #: 2

10. The plaintiff's performance as a physician at MBMHI has always been good, and he has received favorable performance evaluations. He continued to receive both salary increases and favorable performance evaluations up through the year 2016.

11. Further, the plaintiff has, until recently, never had any problem or difficulty in having his hospital privileges renewed at MBMHI.

12. Most recently at MBMHI, plaintiff practiced medicine in Admissions, where he would assess mental health patients for potential admission to MBMHI.

13. Just before New Year's Day, January 1, 2017, plaintiff broke his leg while at home. Subsequently, while still on crutches, he tripped and injured one of his toes. Eventually, two of his toes suffered from gangrene and had to be amputated. In September 2017, plaintiff's condition required stents to be placed surgically in the area of his pelvis, after which he recovered.

14. These injuries and medical conditions required plaintiff to be out of work at MBMHI for a period of time in 2017.

15. When plaintiff was in the hospital and unable to work, he received a call from his supervisor, defendant Terry Holmes, M.D. Dr. Holmes was then the Clinical Director at MBMHI. In the past, Dr. Holmes had given plaintiff favorable performance evaluations, and plaintiff had never had any problem with Dr. Holmes.

16. Nevertheless, while plaintiff was in the hospital recovering from the medical problems described above, Dr. Holmes called him and severely criticized plaintiff for being out, screaming at plaintiff over the phone. There was nothing plaintiff could have done since his physical condition at the time prevented him from working temporarily and required him to be in the hospital.

17. Plaintiff recovered from his condition and was ready to return to work in the fall of 2017. He notified MBMHI of his recovery and intent to return.

18. Notwithstanding plaintiff's longstanding service to MBMHI and notification of his intent to return, he received word by letter dated October 16, 2017 that his hospital privileges at MBMHI would not be renewed. Hospital privileges are necessary for the plaintiff to perform his work at MBMHI.

19. MBMHI, as well as the Tennessee Department of Mental Health and Substance Abuse, distinguish between employment by the State of Tennessee, on the one hand, and whether or not a physician employed by the State enjoys hospital privileges, on the other hand.

20. By not renewing plaintiff's hospital privileges, the defendants or their agents have prevented plaintiff from returning to his work of over three decades.

21. Plaintiff avers that the process of renewing his hospital privileges has been ongoing for many years and has been a perfunctory process. This, however, changed once plaintiff became disabled by virtue of the injuries and/or medical conditions set forth above.

22. Following plaintiff's disability, defendant used the hospital-privileging process in order to prevent plaintiff from returning to work at MBMHI. Plaintiff avers that defendant has illegally discriminated against him based on his disability in failing and refusing to renew hospital privileges that had been routinely renewed for many years prior to his disability. Defendant Holmes erroneously concluded that plaintiff was "not fit for duty" even though there was no evidence to that effect; instead, all evidence pointed to the opposite conclusion.

23. Defendant's pretextual use of the hospital-privileging process to prevent plaintiff from returning to work in a job he still holds with the State of Tennessee is ongoing through the time of filing of this Complaint.

22. After receiving the letter from Dr. Howard Burley denying his application for renewal of privileges, plaintiff, through the undersigned counsel, contacted Dr. Burley and, ultimately, counsel and other decision-makers for defendant. It was agreed that plaintiff would reapply for hospital privileges on a *de novo* basis, i.e., that his previously denied application for the renewal of privileges would not be considered or used against him.

23. Plaintiff, with the assistance of counsel, duly submitted a new application for hospital privileges.

24. As part of this process, plaintiff submitted two (2) health statements attesting to his physical condition and his ability to return to his job and to practice medicine as an M.D. at MBMHI.

25. Nevertheless, plaintiff's second application for the renewal of his hospital privileges was also denied. Purportedly, the denial was on the basis of (a) the lack of a current CPR certification and (b) the purported inability of plaintiff's peers to attest to his current performance, which is hardly surprising given that plaintiff had not been allowed to work following his disability.

26. The reasons provided for the denial of his application for the renewal hospital privileges was a pretext for what in fact was unlawful discrimination against him on the basis of his disability.

27. With regard to the lack of a current CPR certification, plaintiff had always routinely obtained such certifications at MBMHI throughout the duration of his 30-year-plus employment at that facility. Since plaintiff was prevented by the pretextual denial of the renewal of his privileges from returning to MBMHI, plaintiff's CPR certification expired in May 2018 without the ability to renew it as he always had. Plaintiff requested, through counsel, that he be

allowed to obtain his CPR certification as he had always done, at MBMHI, but this request was denied.

28. Ultimately, plaintiff obtained a CPR certification and provided it to defendant. Defendant, however, took the position that the CPR certification was not valid or sufficient, even though the hospital-privileging application materials do not require a particular type of CPR certification.

29. Plaintiff avers that the CPR-certification process, particularly for a physician of plaintiff's experience, is a routine matter but that defendant used plaintiff's disability and his disability-related expiration of his CPR certification in May 2018 as a pretext to deny his hospital privileges and thereby prevent him from returning to his job. Defendant could easily have accommodated plaintiff by allowing him to renew his CPR certification upon his return to his job. Instead, defendant used this hypertechnicality against plaintiff to mask what was in fact discrimination on the basis of plaintiff's disability.

30. Likewise, plaintiff's performance had routinely been endorsed by his peers at MBMHI prior to his disability. In fact, during his original application for hospital privileges submitted in August 2017, Drs. Gloria Butler and John Lowe had given him their endorsement. Drs. Butler and Lowe are employed at MBMHI and are employees of the State of Tennessee, upon information and belief.

31. Nevertheless, during the reapplication process for the renewal of his privileges, Drs. Butler and Lowe apparently indicated that they had not had sufficient contact with plaintiff to assess his performance. Plaintiff reserves the right to allege, in light of further discovery, that one of the defendants or their agents coerced or otherwise improperly persuaded Drs. Butler and/or Lowe to take this position.

32. Further, plaintiff avers that the alleged inability of Dr. Butler or Dr. Lowe to assess his performance due to the passage of time, which, even if true, was caused by his disability and defendant's refusal to allow plaintiff to return to his job following his recovery, was an insufficient reason for defendant to deny plaintiff's application for the renewal of privileges and/or did not actually motivate defendant to do so. That plaintiff had been out and away from Drs. Butler and Lowe professionally for a period of time is perfectly understandable in light of his disability and defendant's unlawful denial of his hospital privileges. In short, the very reason defendant utilized against plaintiff – the lack of his recent contact with Drs. Butler and Lowe – was in fact caused by defendant itself. As such, defendant's reason for denying plaintiff's application renewal of privileges is unworthy of credence and pretextual.

33. Plaintiff further avers that defendant owed him a duty of reasonable accommodation and/or modification of defendant's procedures, policies, or practices under the Americans with Disabilities Act, 42 U.S.C. Section 12131(2), and that defendant failed or refused to do so. Specifically, defendant failed or refused to provide an accommodation or procedural modification to plaintiff regarding his expired CPR certification and regarding the peer review of Drs. Butler and Lowe and, instead, used those procedures, policies, and practices against plaintiff based on his disability.

34. The bylaws of MBMHI provide that peer reviews are not necessary where there is sufficient data on file to assess the performance of a physician who is applying for the **renewal** of hospital privileges at MBMHI. Plaintiff avers that he fell into this category, which is yet another reason that the peer reviews of Drs. Butler and Lowe are pretextual and being used against him without justification. Further, the bylaws provide or suggest a specific reasonable procedural modification that defendant could have made with respect to the alleged peer-review

7

requirement -- using data on file -- which was specifically requested by counsel but refused by defendant.

## COUNT I--AMERICANS WITH DISABILITIES ACT, TITLE II

35. Plaintiff realleges and incorporates by reference any and all allegations contained in paragraphs 1-34 above as if fully set forth verbatim.

36. The actions of the defendant detailed above violate Title II of the Americans with Disabilities Act, which provides in pertinent part as follows in 42 U.S.C. Section 12132:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

37. While the State of Tennessee may enjoy sovereign immunity pursuant to the 11th Amendment of the United States Constitution for monetary damages, the individual defendants herein are not immune from injunctive relief.

38. Plaintiff was a qualified individual with a disability under the quoted statute pursuant to 42 U.S.C. Section 12131(2).

39. Defendant is a public entity as defined in the statute quoted pursuant to 42 U.S.C. Section 12131(1).

40. Under the quoted statute and, specifically, without limitation, 42 U.S.C. Section 12131(2), defendant owed plaintiff a duty to attempt a reasonable accommodation and/or a reasonable modification of defendant's procedures, policies, or practices, including the MBMHI bylaws relating to the hospital privileging process.

41. Under the quoted statute and specifically, without limitation, 42 U.S.C. Section 12131(2), defendant owed plaintiff a duty not to use its procedures, policies, or practices, including the MBMHI bylaws relating to the hospital privileging process, as a pretext for unlawful discrimination against plaintiff on the basis of his disability.

42. Under the quoted statute and specifically, without limitation, 42 U.S.C. Section 12131(2), defendant owed plaintiff a duty not to discriminate against the plaintiff on the basis of his disability in the hospital privileging process.

43. Defendant violated the above-cited statutes in the following particulars, among others:

(a) By failing or refusing to make reasonable modifications to the alleged requirements for a current CPR certification in the MBMHI bylaws by:

(i) allowing plaintiff to obtain the certification on site, as he had always done for many years;

(ii) not considering the fact that plaintiff's CPR certification had expired in May 2018, at a time when he had not been allowed to return to his employment by defendant; and/or

(iii) not considering the CPR certification he obtained and submitted in August 2018;

(b) By relying on a hypertechnicality, a current CPR certification, to disqualify a veteran, loyal practitioner who had devoted approximately 30 years of service to MBMHI and the State of Tennessee from being "privileged" to practice medicine at MBMHI, as he had always done;

(c) By failing to make reasonable accommodations or modifications to its procedures, policies, or practices as it relates to peer reviews by Drs. Gloria Butler and John Lowe by:

9

(i) failing to account for the fact that, by his disability and defendant's own refusal to allow him back to work, it was unreasonable for defendant to expect that Dr. Butler or Dr. Lowe would have knowledge of plaintiff's performance since his disability began -- defendant had been on leave, so there was not "performance" for a peer to assess;

(ii) failing to take into account plaintiff's longstanding employment at MBMHI and repeated positive performance evaluations;

(iii) failing to take into account the positive peer review evaluations of Drs. Butler and Lowe immediately following plaintiff's recovery, in September 2017;

(iv) failing to allow plaintiff to address Dr. Butler or Dr. Lowe following the denial of his application for the renewal of his privileges;

(v) failing to provide a mechanism or opportunity for Drs. Butler and/or Lowe to assess plaintiff's performance, given his disability-related absence and the defendant's refusal to allow him to return to MBMHI;

(vi) failing to waive the requirement of a peer review, especially given that the bylaws addressing privileges expressly contemplate that there may be situations where there is sufficient performance-related data on file for a practitioner, like plaintiff, who is simply attempting to *renew* privileges, that a formal peer review is not necessary; and

(viii) if applicable in light of ongoing discovery and investigation, improperly influencing Dr. Butler and/or Dr. Lowe to assert that they could not assess plaintiff when they had done so previously; and

(d) By using the CPR certification and the peer reviews as a pretext for what in fact was discrimination against plaintiff based on his disability.

10

## COUNT II--REHABILITATION ACT OF 1973

45. Plaintiff realleges and incorporates by reference any and all allegations contained in paragraphs 1-44 above as if fully set forth verbatim.

46. The Rehabilitation Act of 1973, 29 U.S.C. Section 794(a) provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."

47. The actions of defendant hereinabove violated the above statute.

48. The plaintiff is a covered individual with a disability as envisioned in the Rehabilitation Act of 1973.

49. Upon information and belief, defendant is a covered entity under the Rehabilitation Act of 1973 and receives federal financial assistance.

50. The defendant, by the actions detailed above in failing to renew plaintiff's hospital privileges at MBMHI, in failing to make reasonable modifications to its alleged procedures, and in using those procedures as a pretext for discriminating against plaintiff on the basis of his disability, excluded him from participation in defendant's operation of MBMHI, denied him the benefit of participating in the program and operation of MBMHI, and discriminated against him, all based solely on his disability.

51. None of the defendants herein is immune from liability under the Rehabilitation Act of 1973. Therefore, plaintiff sues defendants under that statute for both monetary and injunctive relief.

## COUNT III--14TH AMENDMENT; 42 U.S.C. SECTION 1983

52. Plaintiff realleges and incorporates by reference any and all allegations contained in paragraphs 1-51 above as if fully set forth verbatim.

53. In addition, subject to ongoing discovery, plaintiff asserts that there is no rational basis for treating him differently than other individuals based on his disability.

54. Accordingly, the defendants, through such disparate treatment, violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, for which the defendants are liable.

55. Furthermore, the violation alleged herein is ongoing, as plaintiff is being deprived each day of returning to his job at MBMHI, and as such, in addition to monetary relief, plaintiff seeks injunctive relief precluding the continuing conduct complained of herein.

## DAMAGES

56. Defendants, by their acts detailed above, have deprived plaintiff, a loyal physician with over 30 years of experience at MBMHI, from returning to his employment at MBMHI, using the privileging process as a pretext do so while not actually terminating plaintiff from his employment with the State of Tennessee.

57. Nevertheless, the effect on plaintiff has been substantially the same or similar to the effects that would have resulted from the termination of his employment.

58. Specifically, plaintiff has lost income, continues to lose income, has lost and continues to lose valuable benefits, has been professionally damaged, and has suffered from

humiliation and embarrassment by the acts of an institution to which he devoted virtually his entire professional life.

59. Additionally, plaintiff has incurred attorney's fees and will continue to do so in his attempt to seek relief from defendants' actions.

WHEREFORE, the plaintiff prays for the following relief:

1. On his claims under Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12132, a temporary and permanent injunction:

    (a) requiring that plaintiff be awarded hospital privileges at MBMHI;

    (b) requiring that any requirement for hospital privileges be waived; and/or

    (c) requiring that accommodations or modifications be made to MBMHI's policies, procedures, practices, and/or bylaws such that defendants' stated reasons for not renewing plaintiff's privileges be given no effect;

2. On his claims under the Rehabilitation Act of 1973, the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C. Section 1983, that the injunctive relief sought in the preceding paragraph issue, and that he be awarded monetary damages consisting of lost income and benefits and, if the Court finds that prospective injunctive relief is improper, damages for loss of future income and benefits;

3. A monetary judgment against defendants, not to exceed $1.75 million or such other amount as the trier of fact may award in its discretion, plus costs and attorney's fees;

4. His costs and reasonable attorney's fees;

5. For a jury to try the issues so triable; and

6. Any further general or other relief to which plaintiff may appear entitled.

Respectfully submitted,

/s/ M. Bradley Gilmore
M. Bradley Gilmore (TSCRN 013804)
bgilmore@plcslaw.com
**PARKER, LAWRENCE, CANTRELL & SMITH**
201 Fourth Avenue N., Suite 1700
Nashville, TN 37219
(615) 255-7500
(615) 242-1515 (fax)

*Attorneys for Plaintiff*